```
 1 │ KAREN P. HEWITT
   │ United States Attorney
 2 │ NICOLE ACTON JONES
   │ Assistant U.S. Attorney
 3 │ California State Bar No. 231929
   │ United States Attorney's Office
 4 │ 880 Front Street, Room 6293
   │ San Diego, California 92101-8893
 5 │ Telephone: (619) 557-5482
   │ E-mail: nicole.jones@usdoj.gov
 6 │
   │ Attorneys for Plaintiff
 7 │ United States of America
```

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Criminal Case No. 08CR0882-IEG |
|---|---|
| Plaintiff, | ) |
| | ) **GOVERNMENT'S RESPONSE AND** |
| | ) **OPPOSITION TO DEFENDANT'S MOTIONS TO** |
| v. | ) |
| | ) **(1) COMPEL DISCOVERY; AND** |
| | ) **(2) GRANT LEAVE TO FILE FURTHER** |
| CARLOS HUMBERTO | ) **MOTIONS** |
| FIGUEROA-VILLELA, | ) |
| | ) **TOGETHER WITH STATEMENT OF FACTS** |
| | ) **AND MEMORANDUM OF POINTS AND** |
| Defendant. | ) **AUTHORITIES** |
| | ) |
| | ) Date:  June 9, 2008 |
| | ) Time:  2:00 p.m. |
| | ) Court: The Hon. Irma E. Gonzalez |
| | ) |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Nicole Acton Jones, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's discovery motion in the above-referenced case. Said response is based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

//
//
//
//
//

I

## STATEMENT OF THE CASE

On March 3, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging defendant Carlos Humberto Figueroa-Villela ("Defendant") with Attempted Entry After Deportation, in violation of Title 8, United States Code, Section 1326. On April 1, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty.

II

## STATEMENT OF FACTS

A.  **Defendant's Apprehension**

On March 3, 2008, at approximately 1:40 p.m., Defendant attempted to enter the United States through the San Ysidro Port of Entry. Defendant presented a valid I-551 card bearing his name and likeness, but a TECS query revealed instructions to refer Defendant to secondary inspection. In secondary, officers determined that Defendant had been previously deported.

Defendant was placed under arrest and advised of his Miranda rights. Defendant elected to waive his rights and make a statement. Defendant admitted he is a citizen of Guatemala by birth. Defendant stated he was a lawful permanent resident of the United States but that he was deported in 1997. Defendant admitted he did not apply for permission to return to the United States. Defendant claimed that he was told by the Immigration Judge he could come back after 10 years. Defendant stated that when he was removed from the United States to Guatemala, his LPR card was provided to him with the rest of his property. Defendant stated that on November 1, 2007 he entered the United States using his LPR card. Defendant stated that November 1, 2007 was the only time he had entered the United States. When asked how he had a California driver's license with an issue date in 2004, Defendant stated he had come to the United States once before. When asked about his Rhode Island driver's license issued in December 2007, Defendant again claimed he was only visiting. Defendant admitted, however, that he does not have a return ticket to Guatemala.

Defendant's passenger and the registered owner of the vehicle, Roberto Ramos-Gutierrez stated that he had asked Defendant to drive him and his mother to Mexico for an eye exam. Ramos stated he and Defendant are co-workers and have been working together since the 90's. Ramos stated that in the

time he has known Defendant, there has only been a single one month period in which he did not see or hear from Defendant.

### B. Defendant's Criminal and Immigration History

On or about October 27, 1993, Defendant was convicted after a trial in Los Angeles County Superior Court of six counts of forcible lewd at upon a child in violation of PC § 288(b). Defendant was sentenced to 8 years in prison. The victim of Defendant's repeated sexual abuse was his twelve year old biological daughter

On May 30, 1998, Defendant was ordered deported from the United States to Guatemala by an Immigration Judge. The Warning to Alien Ordered Removed or Deported indicated Defendant could not return to the United States "at any time" because he was deported as a result of an aggravated felony conviction. On June 30, 1997, Defendant was physically removed from the United States to Guatemala via United Airlines flight number 889.

## III
## DEFENDANT'S MOTIONS

### A.   MOTION TO COMPEL DISCOVERY

#### 1.   Discovery in this Matter is Current

The Government has and will continue to fully comply with its discovery obligations. To date, the Government has provided Defendant with 135 pages of discovery and one audiotape. The discovery produced to date includes the reports of Defendant's arrest, a copy of his A-file documents, his rap sheet, his aggravated felony conviction documents, and a copy of his deportation tape. Furthermore, the Government will request that the arresting agency preserve any evidence the Government intends to introduce in its case-in-chief or that may be material to the defense.

#### 2.   The Government Has and Will Continue to Comply With Its Discovery Obligations

The Government recognizes and acknowledges its obligation pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. As set forth above, the Government has complied and will continue to comply with its discovery obligations going forward.

As to exculpatory information, the United States is aware of its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972) and will comply. The United States will also produce any evidence of bias/motive or impeachment of any of its witnesses of which it becomes aware. An inquiry pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) will also be conducted.

The United States will provide a list of witnesses at the time the Government's Trial Memorandum is filed. The grand jury transcript of any person who will testify at trial will also be produced. The United States will produce any reports of experts that it intends to use in its case-in-chief at trial or such reports as may be material to the preparation of the defense.

The United States has provided information within its possession or control pertaining to the prior criminal history of Defendant. If the Government intends to offer any evidence under Rules 404(b) or 609 of the Federal Rules of Evidence, it will provide timely notice to Defendant.

To the extent Defendant requests other specific documents or types of documents, the Government will continue to disclose any and all discovery required by the relevant discovery rules. Accordingly, the Government respectfully requests that no orders compelling specific discovery by the United States be made at this time.

3. **The Government Objects to Requests for Discovery That Go Beyond Any Statutory or Constitutional Disclosure Provision.**
   a. *Defendant's Statements*

The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." The United States has turned over the report of investigation and the primary and secondary reports, which disclose the substance of Defendant's oral statements. If additional reports by United States' agents come to light, the United States will supplement its discovery.

The United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made (i.e. statements that were not made in response to

interrogation) by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Moreover, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

Defendant requests "the substance of any oral statement made to any person which goes to any element of the offense." [Memorandum at 2.] The Government objects to this request because it is overbroad and goes well beyond the scope of Rule 16. This request is not supported by Defendant's cited authority, United States v. Ible, 630 F.2d 389 (5th Cir. 1980), which concerned statements made during the course of an interrogation by a Government agent. As stated previously, the Government has and will continue to comply with Rule 16 and Brady.

The United States also recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(B) to disclose relevant written or recorded statements by Defendant. The Government has disclosed the the videotape of Defendant's post-arrest statement. The Government has also disclosed the audiotape of Defendant's deportation hearing.

### b.     Rough Notes

The United States will fully comply with its discovery obligations under the Jencks Act. The United States objects, however, to Defendant's premature request for the production of any rough notes of United States' agents. [Memorandum at 2, 4, 8.]   For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004). Moreover, the production of agents' notes related to Defendant's statements is not required

under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659 F.2d 932, 941 (9th Cir. 1981). Indeed, the Government has produced a videotape of the entire statement.

In any case, production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify. The United States will, however, take steps to preserve any rough notes that exist in this case.

        *c.*    **Witness Statements**

Defendant requests production of "any witness statements at least twenty-four hours before the witness testifies." [Memorandum at 5.] As written, this request is overbroad because the request covers all prior statements of Government witnesses without regard to the relevance of that testimony to this case. The Government will, as stated previously, comply with the Jencks Act. Production of Jencks material need only occur *after* the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Although the United States will likely produce most Jencks material in advance of trial, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after the witness testifies.

Defendant also requests any statements of "percipient witnesses or individuals who may have information relevant to the case who the government does not intend to call as witnesses." [Memorandum at 6.] No competent authority is cited for this broad request and the Government is aware of none. As stated previously, the Government has and will continue to comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. In any case, the discovery produced to date provides the names of all relevant witnesses.

        *d.*    **Impeachment Evidence**

Regarding prospective government witnesses, the Government will provide the defendant with the following items prior to any such witness's trial testimony:

  (1) The terms of all agreements (or any other inducements) it has made with government witnesses, if they are entered into;

  (2) All relevant exculpatory evidence concerning the credibility or bias of government witnesses as mandated by law; and,

  (3) Any record of prior criminal convictions (of which the Government is aware) that could be used to impeach a government witness.

Furthermore, any uncharged prior misconduct attributable to government witnesses, all promises made to and consideration given to such witnesses by the Government, and all threats of prosecution made to government witnesses by the Government will be disclosed if required by the doctrine of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 450 U.S. 150 (1972). The Government will not provide information which "arguably could be helpful or useful to the defense" because it does not meet the Brady standard.

As stated above, the Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government, however, objects to providing any evidence that a witness has *ever* used narcotics or other controlled substance, or has *ever* been an alcoholic because such information is not discoverable under Rule 16, <u>Brady</u>, <u>Giglio</u>, <u>Henthorn</u>, or any other Constitutional or statutory disclosure provision. [Memorandum at 6, 9.]

  *e.* ***Witness Lists***

While the Government will supply a tentative witness list with its trial memorandum, it objects to providing addresses. See <u>United States v. Steele</u>, 785 F.2d 743, 750 (9th Cir. 1986); <u>United States v. Sukumolachan</u>, 610 F.2d 685, 688 (9th Cir. 1980); <u>United States v. Conder</u>, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses). The Government also objects to any request that the United States provide a list of every witness to the crimes charged who will not be called as a United States witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule

16(a)(1)(c)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)).

### f.    *Personnel Records of Government Officers Involved in the Arrest*

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

Defendant's request that the specific prosecutor in this case review the personnel files is unwarranted and unnecessary. [Memorandum at 11.] Henthorn expressly provides that it is the "government," not the prosecutor, which must review the personnel files. Henthorn, 931 F.2d at 30-31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States opposes the request for an order that the prosecutor personally review the personnel files.

Defendant has not cited any competent authority that requires the United States to produce "all citizen complaints and other related internal affairs documents." [Memorandum at 11.] The case cited by Defendant, Pitchess v. Superior Court, 11 Cal.3d 531, 539 (1974) has been superceded by statute. See Fagan v. Superior Court, 111 Cal. App.4th 607 (2003). Moreover, Pitchess involved a criminal case in which a defendant who claimed to have acted in self-defense sought evidence as to the police officers' use of force on previous occasions. Pitchess, 11 Cal. 3d at 534, 535. Pitchess is simply inapplicable to Defendant's case.

### g.    *Training of Relevant Law Enforcement Officers*

The Government objects to providing to Defendant a copy of all policies, training instructions, and manuals issued by all law enforcement agencies involved in this case. [Memorandum at 12.] The

requested policies, training instructions, and manuals are irrelevant and do not fall within the scope of Rule 16, or any other statutory or Constitutional disclosure provision. Even if one or more of the inspectors, officers, or special agents violated his or her own administrative regulations, guidelines, or procedures, such violations would not result in the exclusion of evidence if Defendant's Constitutional and statutory rights were not violated in this case. United States v. Caceres, 440 U.S. 741, 744 (1979); United States v. Hinton, 222 F.3d 664 (9th Cir. 2000).

### h.   *Performance Goals and Policy Awards*

The Government objects to providing Defendant with information regarding the agency standards used for measuring, compensating, or reprimanding the conduct of all law enforcement officers involved in this case. [Memorandum at 11.] The requested information regarding the agency standards used for measuring, compensating, or reprimanding the conduct of the law enforcement officers is irrelevant and does not fall within the scope of Rule 16, exculpatory evidence under Brady, impeachment evidence under Giglio, or any other authority governing disclosure.

### B.   MOTION FOR LEAVE TO FILE FURTHER MOTIONS

The United States does not object to the granting of leave to allow Defendant to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

## IV
## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Defendant's motion be denied.

DATED: May 19, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Nicole Acton Jones*
NICOLE ACTON JONES
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS HUMBERTO FIGUEROA-VILLELA,<br><br>Defendant. | Criminal Case No. 08CR0882-IEG<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, NICOLE ACTON JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSTION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Daniel Casillas

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 17, 2008.

/s/ *Nicole Acton Jones*
NICOLE ACTON JONES
Assistant U.S. Attorney